Good morning, everyone. Please be seated. The first argued case this morning is No. 14-1232, Virtual Agility Incorporated v. Salesforce.com. Mr. Villareal. Thank you for the report. Good morning, Your Honors. My name is Jose Villareal. I represent the Salesforce.com appellant. And the other appellants, which are Salesforce.com's customers, except for Kimberly Clark. Kimberly Clark is being represented by Mr. Daryl Adams on counsel's paper. Okay. Proceed. Thank you, Your Honor. Your Honor, the district court erred in denying the motion to stay in the underlying litigation pending CBM review. In this case, Salesforce.com filed a petition for CBM review before a scheduling conference had even been set. Within days, all of the other defendants in Salesforce.com filed a motion to stay the underlying litigation pending the CBM review. Are you suggesting that you think the timeline that we ought to adopt for evaluating the factors is when the motion was filed? Because if so, keep in mind, then we don't even know if CBM review is granted at that point. Yes, Your Honor. What I suggest to you is that for purposes of evaluating the second prong, which is the timing prong, for purposes of that prong, certainly you should look at the time when the motion was filed. Because that prong calls specifically for the court to look at whether any discovery has taken place and whether a trial date has been set. Is that the line that you would draw, whether or not there's been discovery, whether there's been a pretrial conference? Where would you draw the line on your theory? Well, it's a sliding scale on that prong. But the earliest possible stage for that specific prong would be before any discovery has happened. In most cases, discovery has not happened before the scheduling of the trial. Let's talk about this case. Okay. In this case, discovery had not happened and no trial date had been set by the time that the motion to stay was filed. But since then, certain events have transpired under the normal course of proceedings. Yes, Your Honor. Since then, some discovery has transpired. There's been some third-party discovery and documentation has been exchanged. But so far, no party depositions have taken place. A markment has not occurred. Expert discovery has not occurred. But if it's a sliding scale, then why shouldn't there be a significant weight given to deference to the judge? Well, the reason is that the statute itself calls for this court on appeal to ensure that there is a consistent application of the law. And it gives you the de novo review tool to do so. This court has recognized that in many instances, in order to ensure that there is consistent application of the law, that a full de novo review of the entire record is necessary. And that's what we submit that this case should be reviewed under a complete de novo review. Are you aware of any statute that provides that review should be, quote-unquote, maybe de novo? In our briefing, we point to a statute that has a similar language that indicates that review is available for the courts. And the case law indicates that it's up to the discretion of the courts to apply it. But in our specific case, if I may say so, this court has more guidance than that, because the express language of the statute says that the court is given the mandate to ensure consistent application of the law. And so it gives you the discretion to use the de novo review to ensure that this happens. So how would you divide it up? Is the whole inquiry completely de novo, or are there going to be some subsidiary fact findings or subsidiary discretionary questions that we would give deference to? And so which ones would those be? Yes, Judge Chen, I think you would look at the record in, for example, in a situation where you have a fully developed record, such as after trial, there may be instances where a judge has already made conclusions based on credibility. At that point, this court may decide that deference is appropriate to those types of facts. Like, for example, one of the issues here that was raised was that the prosecuting attorney was over the age of 70, and as such there was concern that perhaps that attorney wouldn't be available if the case were stayed a year or more. Would such a credibility determination be, suppose the judge brought the attorney in, and are you in good health, what do your medical records look like, anything I should know? And suppose the judge made a fact finding, the guy's on death's door. Is that the kind of thing that you think we would give deference to in that scenario? Well, that it's certainly the sort of thing where a credibility determination has been made, and that tilts more toward providing some deference to those facts. But those are not the facts in our case. The judge never spoke to any witness, and in fact the individual that was appointed to as being over 70 years old has already been deposed and examined by both parties. How old is he? Do we know how old he is? I'm not sure exactly how old he is. The briefing shows that he's over 70, but he has been deposed by both parties already. Both parties examined that witness. So I don't think there's an issue as to that. The other individual that's pointed out as being older is the widow of the inventor of the patent, but the evidence does not show that this person has any relevant knowledge. I mean, she's just the widow of the inventor. That's all that we know. Therefore, I think the argument that a police may make regarding lost memories and fading memories should just not be given weight based on the information we have at this point. By the same token, there's no information to tell us that if there are fading memories, that they could also fail repellents. So that is just a neutral factor and should not be given any weight as to our case. I'd like to point out further that the CBM petition was instituted in our case before the court ruled on the motion to stay. And the PTAB found that as to the only patent in the underlying litigation, that each claim of that patent is more likely than not invalid under two separate grounds. Out of curiosity, what do you see as the daylight between the first and the fourth factor? They seem almost identical to me. It's hard for me to imagine what pieces of evidence might weigh one direction on one that wouldn't be exactly the same on the fourth. Do you think that the fact that they articulated it as factor one and four means it's doubly important in the analysis somehow? Or do you see daylight between the two of them that you could help me understand? Yes, the two factors are different. There is some ambiguity as to how they should be applied. And if we look at the congressional history, the congressional history is clear that Congress added the fourth prong, which is the reduction of the burden of the parties in the court, in addition and to be weighed separately than the first prong, which is the simplification issue. The first prong just looks at are the issues going to be simplified if a stay is granted. And in our case, we say significantly so. But the fourth prong also looks at the burden. For example, in our case, in addition to avoiding to litigate a patent that has been found to be more likely than not invalid, we have 12 different party defendants. And any task is multiplied potentially by 12. For example, if we have 30 v. 6 depositions, that could be times 12. And so in our case, even a small simplification of matters can lead to a significant reduction in the burden of the parties. And so therefore, we submit that those two factors should be weighed separately. That's what Congress wanted. And that they both weigh heavily in favor of a stay. So just thinking of what might happen on your scenario, let's assume that some but not all of the claims are invalidated. So some claims survive, and there's an immediate injunction. Are you better off? Well, the judge goes back to the district court, and there we have this last word that you've insisted will come out of the examination. Well, we don't know what's going to happen. In your scenario, you're saying that... Of course we don't know, but you certainly must have considered all of these possibilities. And isn't this a significant one? Well, certainly there's a possibility that some claims can survive and some may not survive. That does not mean that there isn't going to be simplification of the issues because by the nature of the statute, if a stay is granted, the appellant will not be able to bring up the matters that have been brought up under the CBN review, which is anticipation under one specific piece of prior art in Section 101. Precisely, so you get an immediate injunction. Pardon me, Your Honor? You may therefore, since you can't re-argue the issues, be subject to at least a preliminary restraint. Well... Isn't that almost the necessary consequences, the trade-off, when this was enacted? I don't see that that follows, Your Honor. I see that the CBN proceeding going through, and it's going to clarify the record. It's going to complete the record necessary for claim construction, and then if there's a patent to litigate after the CBN review is done, the litigation picks up where it left off. Well, I suppose that remains to be seen. You're confident that that's the legislative purpose? Well, the legislative purpose, Your Honor, is very clear that it is to reduce the burden of litigants, and that's why the fourth factor was added, to avoid dual-track litigation of the same issues, and also in a situation when a patent has already been found to be more likely than not invalid. So that is the purpose of the statute, and so therefore there's a reduction of the burden, reduction of expenses on the parties, while this determination is being made by the PPAB. Indeed, to prevent challenge to the patent before litigation is begun. That's not the situation. Well, our case, litigation has begun, but the appellant shouldn't be prejudiced by the fact that the order on the motion to stay was decided nine months after it was filed. If that order had been decided earlier on, then potentially we would have avoided the cost up to date. Now, there's still plenty of litigation left to go and plenty of expenses to be avoided and burden to be reduced. Counsel, isn't it true that you can only bring a CBM proceeding if you've been sued for infringement so that the statute expressly, or if accused of infringement, so that the statute expressly contemplates litigation having started at the time all of this occurred? That's exactly right, Your Honor. The statute, CBM review can only be requested if you've been sued of infringement or if you have been charged with specific infringement. You've been accused, but not necessarily with a suit filed, but there has to be an actual controversy, as in the Declaratory Judgment Act. So you have to be accused. You need to have been accused, but those were not the facts in our case, Your Honor. The defendants in the case were not notified at all that this suit was coming. It was just simply filed, so there was no opportunity to file a CBM review prior to the filing of the lawsuit. Is that true of all the defendants? Yes, Your Honor, it's true of all the defendants. Okay. One could always argue that the triggering of a CBM proceeding would, a stay would be good because it would reduce the burden on the parties and it would also, a CBM proceeding would simplify the issues for any subsequent litigation. What are the boundaries of your position? I mean, when would a stay not be appropriate? Well, you've got to look at the specific circumstances. For example, if it happens that a CBM is requested or instituted on claims that the plaintiff decides to drop and so you have a situation of non-overlapping claims that are being reviewed by the PTAB and the plaintiff decides to pursue the other claims in the litigation. In that situation, for example, the benefits to be gained are much, much less and that may be a situation where a stay is not warranted. Could that also be true in a multi-patent suit? Suppose that you were sued under four separate patents and only one of them is potentially subject to a CBM review. In a scenario like that, perhaps the district court would absolutely have the discretion to decide that... The court certainly would have the discretion because in that situation, only one of multiple patents is being reviewed and so the case potentially could go forward with patents that are not being challenged and do not have the question mark as to whether they are valid or not. Are you saying that you're suggesting under those circumstances a partial stay would be required? That would seem to me to be quite novel and unexpected. Are you suggesting that if there were four patents sued against you and one of them was subject to a CBM review, you would suggest the district court stay discovery as to that one but proceed with discovery on the other three? No, I'm suggesting that all the factors have to be weighed but the fact that only one of the patents is under CBM review would affect how the factors are weighed and at the end of the day, it may be likely that a stay is not warranted for the entire case. If you were to get your stay, how long would it last for? Well, the CBM review is scheduled to have a final determination by November of this year. After that, there's a possibility of appeal but we don't know the parties that are going to appeal so it could be as short as November of this year but it could be longer than that if there are appeals but the appeals are directly to this court. I'm trying to understand when does the estoppel attach? Isn't there something in the AIA which indicates that at the time of a final written decision by the patent board, the estoppel effect kicks in? Yes, and this is an issue that hasn't been litigated but the statute says that once a final written decision under the statute comes out, that the party may not raise those same issues that were brought up in the transitional proceedings so it's when a final written decision comes out from the CBM. I can't tell you exactly what that is. An interpretation is certainly that it could be after the PTAB issues their final written decision. Okay, let's hear from the other side. I will say this is rebuttal time. Thank you, Your Honor. Mr. Hurt. Thank you. Thank you, Your Honor. May it please the court, my name is Christian Hurt. I represent Virtual Agility. I'd like to begin with some of the questions about the standard of review. It's our position that de novo review is not appropriate in this case because the district court's decision hinged on findings of historical fact, particularly that Virtual Agility and Salesforce are direct competitors in the market for enterprise-level cloud-based services, specifically the market for government customers, that Virtual Agility is a substantially smaller competitor in that market. Even if we were to agree with you that there are some findings of historical fact underlying the decision, why wouldn't everything else be de novo given what the AIA says? Well, I think under the AIA it says there's two pieces to it. The first is that the review in this court is to ensure the consistent application of established precedent. That's the scope of the review. Then the next piece of the statute says that such review may be de novo. And so the part of the review that would be de novo is to ensure the consistent application of established precedent. Findings of historical fact, such as whether my client and Mr. Villareal's client directly compete, don't impact whether precedent with the application of the law to those historical facts in this case. I think the other reason that de novo review is not appropriate is because the statute, as Your Honor was mentioning earlier, says may be de novo as opposed to shall be de novo. The general rule is the party invoking a statute that's permissive, such as may, has the burden to show why it applies. When Section 18 was enacted, the established law was that, such as the Landis decision in the 1930s, that the decision to stay or not stay a case lied within the discretion of the district court. And the reason for that was that the district court is much better positioned to determine whether it should invest its resources into litigation or stay that litigation because the district court bears the consequences of that decision, whether it's staying a case that comes back three or four years later with a ballooned prosecution history and issues that aren't simplified. I'm a little confused. At the beginning you said when it comes to findings of historical fact, you would submit that we should review that for clear error, but everything else in terms of understanding what are the appropriate considerations for each factor and what the ultimate determination of whether a stay should be granted in light of those factors would be a question of law that we would review de novo. I don't think that's correct. I don't think it is a question of law. The statute does not transform that decision, which has historically been discretionary, into a question of law. It only provides for de novo review. Well, de novo review of what then? Because we already have de novo review of legal questions. That's correct. The use of discretion standard necessarily includes that. So they went further in the statute. So what did they anticipate would get de novo review? So they went further in the sense that they gave the court the option to go further because it says such review may be de novo, not shall be de novo. And it is a case-by-case determination because the way the statute's worded, and it's not the most ideal wording, is that such review of the district court's decision may be de novo, which indicates in a particular case the court has the right... So it's completely at our discretion whether to give discretion to the district court. That's correct. And in a situation, Judge Moore, that I think would be appropriate would be if you have the same patent in two different districts that had been subject to a CBM proceeding and the district court stayed one case and the other district court did not stay the case, then this court would have to harmonize those two decisions. Why? Just because it's the same patent doesn't mean all the rest of the factors are identical. One case might involve big companies suing big companies. The other case might involve big companies suing small companies. Why would the mere fact that it's the same patent somehow convert it into de novo review? Well, I would assume that if it is the same patent and it's filed at the same time against similar parties, the facts in those two proceedings would be the same. Why? Maybe... So you're assuming everything is identical about the suits. I mean, that's the... Or similar enough that there would be a... that there would not have been a consistent application of established precedent. I mean, that would be one example. I think another example... Suppose the first case comes up and it's the very first case before us and we say, you know what? This one is not an abuse of discretion. Next case comes up, identical facts. District court has gone the other way. My inclination might be to say not an abuse of discretion, but are you saying under the statute that that's exactly when I should insert de novo review and say, well, it is an abuse of discretion here because these facts read almost identically on the other facts where a stay was granted and we upheld the stay? Is that a scenario, even though I wouldn't conclude normally it was an abuse of discretion in either instance, that perhaps I have to utilize de novo review to go the other way then? I think in that situation, if it was required to ensure the consistent application of established precedent, that begs the question, well, what is the established precedent? And if the established precedent is that a stay was properly ruled upon in the first case, the second case would have to follow that precedent and that would be assuming that the facts are identical. I think, though, in most cases, the question is what were the facts of the case? In our case, because of the prejudice point, that is inherently bound with this case. The district court judge... What is the prejudice point? I'm sorry, Your Honor. There are two points with that. That we directly compete with Salesforce in the market for enterprise-level cloud-based computer products. That we're a much smaller competitor than theirs and that any delay, if it's a substantial delay in this proceeding... The other side says there's no evidence that you two are direct competitors. I disagree with that, Your Honor. There's significant evidence we put in front of the district court judge, all of which was unrebutted below. Salesforce did not provide any contrary evidence and they did not even meaningfully contest our evidence. The evidence we put below on direct competitors is a declaration from our CEO, Mr. Rudolph. Right, and then he pointed to an exhibit, right? Yes, there's two. An RFQ. That's correct. There's two exhibits and that's one of them. And that RFQ, it identifies Salesforce.com in the RFQ, right? But you wouldn't... You're not telling me that Salesforce.com entered its own bid for that RFQ. Is that right? Well, there's two. I just need a yes or no. Do you agree with me? There's no evidence that Salesforce did not... I mean, after all, it was a small business set-aside, wasn't it? I believe that's correct on... That's correct. And Salesforce.com doesn't qualify for a small business set-aside RFQ, right? I'm not sure about that. I would assume not since they're a $35-plus billion company. Fine. So then there's no evidence in the record that your company and Salesforce.com ever bid on the same contract. On the exact same contract. This was the only one that was identified in the record. This is the only one that Judge Gilstrap relied on to conclude that the two entities took part in the same government bid process, at least one. I think there's a distinction between taking part in the bid process and submitting a bid. The first response I would have is,  that it's highly unlikely Salesforce would qualify for this bid, but they never denied that they didn't put in a bid and they would have evidence of whether they would have put in a bid. The second point is, the government did not pick these brand-name products out of a hat. Salesforce and its website within the Sir Rudolph Declaration has a substantial amount of government customers. The fact that the government, who is one of my client's major customers, lifted Sales Cloud and Service Cloud, the products that we have accused, and then solicited a bid from us to have a product that meets those specifications, that is one of our customers telling us that Salesforce's products and our products are in the same market. I think they're in the same general market, but it's not clear to me that in this very large market, that you two have ever actually bumped up against each other and competing for the same contract. That's the question I'm having. Well, we have similar customers with the state agencies and federal agencies, so one of our customers was the state of New Jersey. That's one of their customers. I don't think at this preliminary stage, I mean, you have to go back and remember they filed their motion, as Mr. Villarreal repeatedly emphasized, before any discovery took place. Most of the discovery on the competitive relationship that they accused us of not putting forward would be in their possession, things like market studies, research reports, other things. Our client's a very small client and doesn't have the money to subscribe to something like NPD reports. We have a declaration from Mr. Rudolph that customers of Virtual Agility have tested Salesforce's products and have discussed Salesforce's products with them. That evidence was unrebutted. I think at this stage in the proceeding, we don't have to show... Were those all small business data science? I don't believe he mentioned whether they were even government customers or private sector customers, and I'm not sure of the specifics of what he would have meant, of what particular customer it would have been or what type of public sector bid. Yes, Your Honor. One of the issues that Judge Gilstrap seems to have relied on in multiple places in the opinion is what appears to be his own review or sort of second guessing of the likelihood that the 21 claims are going to be invalidated under 101 or 102. The PTO has concluded, by preponderance of the evidence, more likely than not, that all 21 claims are invalid under two separate grounds. And what I see Judge Gilstrap as having done, quite clearly, is to say he doesn't agree. He doesn't think that that is, in fact, correct. Do you think that's a fair reading of what he did? I think it is. I think what Judge Gilstrap did was look at what is the risk or what is the true potential for that proceeding to simplify this case. And it's undisputed that for there to be a significant simplification that the Patent Office will have to invalidate every single claim. All of our claims implicate the same products. Discover is the same. That's never been disputed. Here's what concerns me. I understand. Actually, he seems to have lumped it under burden on the court and parties, but he also did discuss it in the simplification of the issues section. My concern is that it does seem clear from the purpose of the statute that Congress intended this to streamline proceedings. And what makes me a little nervous is the idea that district court judges would feel compelled to do their own independent, merit-based analysis of all the issues in the petition to the PTO as part of the determination. It just doesn't feel honestly to me like something that he should have been doing. It doesn't feel like that was what Congress meant when it said, will it simplify the issues and streamline the trial. It feels a bit strange to me to think that what that included was the idea he would do his own independent review of what the PTO did and say, I agree or disagree with their initial assessment. That feels like an awkward thing, so I want to hear your thoughts on whether that is really fair ground for district court in the consideration of the four factors. I think it is, and the reason for that is the two factors you alluded to, the first factor and the fourth factor, the likelihood. Is the state going to simplify the issues in the litigation, and is the state going to reduce the burden on the parties in the court? Ultimately, the question is, how will the PTO proceeding impact the district court's docket? As part of that analysis, the district court has to look at the PTO proceeding and make a decision on whether there will be merit to them. Mr. V, but the PTO as an initial inquiry, keep in mind, the statute has elevated the standard now for instituting these proceedings. It isn't any longer a substantial question. Now it is more likely than not invalid, and the PTO concluded that that was true here on two completely independent, unrelated grounds for every claim in the patent. Is this a scenario where we really want Judge Skillstrap to spend his time, energy, and resources, and the party's time, energy, and resources, converting this into a likelihood of success analysis? That is a well-known factor used in PI, but it wasn't adopted as one of the factors here. I think it is tied to the statute, because the question is, how will the proceedings simplify the litigation? I understand the burden to institute a proceeding is raised from substantial new question to more likely than not, but the PTO's decision is not the end of the matter, and especially on the 101 issue that's been raised in the PFAT proceeding, there's a significant uncertainty in the law right now with Section 101. The PFAT decision actually hinged on the application of the plurality opinion in CLS Bank, this court's plurality opinion, which wasn't a majority of this court, and the PTAB expressly compared the claims in the 413 patents, that they are just like the claims in CLS Bank, and actually specifically the system claims in CLS Bank. That decision from the PTAB is going to be subject to de novo review in this court. On the 102 reference issue, the PTAB's decision gave a very short discussion. There's 21 claims, some of them are dependent claims that specify a particular type of user interface, none of which the PTAB got into, making it fairly likely that at the time of the final decision, at least some of these claims will come out. You filed a motion to amend the claims in the CBM proceeding, right? Yeah, yes, Your Honor. So, if there was no stay, how would the litigation go? How would you do claim construction? Which claims would you be construing? Would you be construing the originally granted claims, or would you be fighting over the claims as they are on the move through amendments in the CBM proceeding? And then what would go in front of the jury? Well, the thing that would go in front of the jury is the ultimate claim construction that the judge adopts. Which claims, though? It would be of the claims that are in the lawsuit. So, everybody in the jury and the trial would just pretend that what's going on in the parallel proceeding in the PTO is non-existent. That's not exactly correct. So, the defendants have put at issue in the current claim construction issues related to the amendments. The district court judge, Judge Gilstrap, issued an opinion assessing how these potential amendments might affect claim construction and said that it won't. There's only one narrow circumstance that it might, and that he would take up a rolling claim construction or would be open to a rolling claim construction on that basis. One of the points that the defendants made is that the claim construction record in this case isn't closed, but under the PTAD's current schedule, the last chance that my client will have an opportunity to make any statements impacting claim construction is in June. The trial in our district court case is in November, giving the district court plenty of time to incorporate how the potential amendments or any statements that we make in the CBN proceedings would impact the scope of the claims. I think the other point I would make is that more than half of the claims are not even subject to the amendment. So, there's a whole block of claims, I believe it's 12 of the 21, that we have not even filed the motion to amend on. For the other block of claims that we have, it's a contingent motion to amend, and amendment is not a matter of right in the CBN proceedings. So, first, the Patent Office, in its final decision, would have to hold firm on all of its rejections, and if it did hold firm on its rejections, it would have to grant us leave to amend, and it's not exactly clear if they will or if they won't, but given that more than half of the claims are not even subject to the amendment and that the scope of this case is the same, whether we go to trial on one claim, or 10 claims, or 21 claims, in terms of discovery about the accused products, damages, and, you know, inducement, willfulness, all of those things, I don't think the district court judge is correct in finding that the simplification won't be meaningful when counterbalanced with the prejudice of the history. When you say the scope is the same, on the path that we're on at the moment, that the trial would proceed on all of the claims? Well, no. The reason is that the district court has adopted a version of the model order that narrows the prior art references and narrows the asserted claims for trial. We would have to go through that proceeding and narrow our case down for trial anyway, and so I don't think, under either circumstance, we would go to trial on 21. Tracking the proposed amendments so that there would be a parallel path on identical claims, is that contemplated as to how this would proceed? One of the troublesome aspects here is that here we have a procedure that was designed to simplify, to provide an easy and economical route towards what might be viewed as an inevitable result, and at the same time, trial in the court is also a direct path to a result which may or may not be final when it's all over, but for the two to go on concurrently seems to be the one direction that the Congress sought to avoid. I think that's correct in the general case, but the difference here, under what Judge Gilstrap found, is the difference between, do we do this concurrently or do we do it serially, that the odds that the litigation is going to be meaningfully simplified by the proceeding, the judge found was not significant enough to warrant a stay on my client's presumptively valid addendum. What do we do about the fourth factor? I mean, it's a separate factor, is it not? So shouldn't it be given separate weight? It is a separate factor. From the first factor. It is a separate factor, and the judge addressed it as a separate factor. It looked like the judge may have been sort of just subsuming the fourth factor into the first factor. Well, there's two points to that. I don't think he subsumed the factors. He found that there is some overlap, and as the court was alluding to earlier, there is a lot of overlap. It's a more simplified case. It's a case with less burden on the court. I think the other point, too, is in the opinion, Judge Gilstraff summarizes the defendant's arguments below on the fourth factor as being the same as their arguments on the first factor, and the new arguments they've raised on appeal about the burden on third parties, they never raised them below. So you'd agree then, at least, that when it comes to the fourth factor, perhaps because it's so similar to the first factor in terms of its consequences, that if we feel like the first factor points in one direction, then it's kind of like a doubling down, that the fourth factor sort of doubles the weight on leaning in that one particular direction. I think that's generally correct, but the fourth factor, when you're looking at the burden to the court and the parties, I think that factor particularly emphasizes why deference is appropriate, because the question is, what's going to be the burden on Judge Gilstraff? And I think, you know, when you divide... The standard of review often reduces to which institution is in a better position to determine the issue. Who's the better placed institution, the Court of Appeals or the District Court? And the burden on the Court is the burden on the District Court. So if this case comes back to the District Court, Judge Gilstraff's faced with that burden. Most cases settle on appeal. By the time cases come on appeal, the issues have been sufficiently narrowed that I think it would probably be... It is. All 12 defendants. And I didn't notice him saying anything that I would give deference to, like, for example, oh, well, my docket's wide open, I've got lots of time, so this isn't a big deal. Like, I didn't... You're telling me give deference to his decision about what is or is not a burden on him. That would seem to me to be somehow, meaning uniquely affiliated to him as opposed to all District Court judges, because I don't know why else I would give deference to him on that decision. And I see nothing in page 15 or 16 of his opinion where he went through burden on the court whereby he said something about how this would be a burden or not a burden on him. Well, I think he tied it to the simplification of the issues and made the decision that it wouldn't reduce the court's burden if this case comes back in a more complicated form or in a substantially similar form when weighed against the prejudice to virtual agility from a multi-year study. And ultimately, even... I mean, this decision... So under the broadcast innovation decision, which is where the four factors are from, it was abusive discretion standard, and that's something clearer in judgment. I don't see any reason to depart, especially when the factor states that it's a question what's the burden on the District Court judge. Okay. Thank you, Mr. Hurst. Thank you, Your Honor. Your Honor, can I ask a few questions? You have a few minutes for a few questions running over. Thank you, Your Honor. First, I'd like to address the concept of the de novo review. The legislative history makes it clear that one of the reasons that the de novo review was provided and that the statute says a consistent application of the law is that Congress was trying to change the prior of what had happened before as far as the non-uniformity on motions to stay pending re-examination. We're just talking about a floor statement from a single senator, right? That's correct, Your Honor. That's correct. Is that enough to understand the words of the statute? Well, that certainly sheds light on the statute. No, it sheds light on what that individual senator thought about what ought to happen. It does not speak on behalf of Congress or the President signing the bill. Okay, why don't you move on? Let me ask you a question. Tactical advantage. You held back two prior art references. Feels really tactical to me. You have three prior art references that you've asserted in litigation are all 102 references. You only gave the PTO one of them. You clearly did it to avoid the estoppel. You wanted to keep something in your hip pocket to be able to go forward with at the district court. That seems like quintessential tactical behavior. You could have streamlined this a lot more by giving all three to the PTO and letting them make that decision. You didn't. You decided to keep some stuff out to make the district court go through it. Why doesn't that weigh heavily against you? Well, because, Your Honor, that is just simply not the case. You gave all three to the PTO? Am I mistaken on the facts? No, Your Honor. Judge Gilstrap states in his record, in his opinion, that one of the references, the text for reference, we had to go through an extrajudicial process to get documentation from Canada. In fact, we only obtained those documents at the end of last year. We didn't have those documents when the original CBM petition was filed at the beginning of the case. Of course, Congress encourages an early filing. That's one of the two. There were three prior references. What about the other one? The other one is Oracle Projects. We mention that project because there are witnesses in Northern California that we have informed the court that we would need to depose at some point because they work for Oracle. You have alleged that that is a 102 barring novelty read-on anticipation reference. There is nothing I see in Section 18, the CBM procedures, that prohibits you from bringing that to the attention of the PTO for their consideration. So why didn't you? At the point that we filed the CBM, we did not have that. We knew that Oracle was to lead and we served a subpoena on Oracle. We obtained documents from Oracle after the summer was done in the early fall. We knew that there were going to be witnesses from Oracle in Northern California. Did you allege in any portion prior to filing the CBM that you believed that there were these three different grounds of invalidation under 102, three different references we'll call them? No, Your Honor. We thought that what happened is we filed a motion to transfer the case because the venue, we believe, was more convenient in Northern California. I think that's non-responsive. What everyone recognized when this legislation was enacted was that there were opportunities for abuse and gamesmanship and tactics and so on. And Congress tried the legislators to cut back on it. Now, isn't this a significant distortion of that purpose? Not at all, Your Honor. We did not have that evidence early on in the case. The reason that Judge Gilstrap points to that Oracle Projects is because we moved to transfer the case and we indicated that Oracle Projects was a source of good prior art and that there were witnesses in Northern California that would allow us to obtain that information. Well, now that you have it, can't you supplement the proceeding at the PTO with that information so that everything will be consolidated in one forum? I'm not aware that you can supplement the purpose. Well, really, because the post-grant review, the beginning of Section 18, says all normal post-grant review procedures shall apply to this as well. One of the normal post-grant review procedures that exist for re-exams, for example, is IDSs. So it seems to me that the patentee could quite easily give these two pieces of prior art to the PTAB for consideration also. So, why can't you do that? It could be done through a separate petition. It would just throw out off the whole process because the process has already been started and the PTAB already made a finding. We would have to begin the process again and file a whole new memo and potentially extra declaration. It could be done, but it would probably have to be preferable to a second procedure. So your assertion on appeal, to be clear, is those other two references that Judge Gilstrap mentioned, you did not have them, possess them, or know about them. There's no way you could have given them to the PTO at the time you filed CBM. Well, we had information about them, but we did not have enough information, complete information, to be able to file CBM. All right, any more questions? No questions? Okay, thank you both. Thank you. You may be taken under submission.